**READY FIXTURES COMPANY,
Michael Polsky, Receiver,
Plaintiff,**

v.

**STEVENS CABINETS, d/b/a Stevens
Industries, Inc., Defendant.**

No. 06–C–654–C.

United States District Court,
W.D. Wisconsin.

June 6, 2007.

Lawrence Clancy, Cook & Franke S.C., Milwaukee, WI, for Defendant.

## OPINION and ORDER

CRABB, District Judge.

This is a civil action arising under Wis. Stat. § 128.07. Plaintiff Michael Polsky, receiver for Ready Fixtures Company, alleges that defendant Stevens Cabinets received a preferential transfer of money from Ready Fixtures after the company became insolvent. Plaintiff contends that defendant is obligated under Wis. Stat. § 128.07(2) to return the transfer for proportional redistribution among Ready Fixtures' remaining creditors. The action was filed originally in the Circuit Court for Washburn County, Wisconsin; later, defendant removed to this court. Because plaintiff and defendant are citizens of different states and because more than $75,000 is in dispute, jurisdiction is present under 42 U.S.C. § 1332. *Hoagland ex rel. Midwest Transit, Inc. v. Sandberg, Phoenix & von Gontard, P.C.*, 385 F.3d 737, 738 (7th Cir.2004) (citizenship of receiver, not company, considered when determining diversity of parties in action brought by receiver).

Now before the court is defendant's motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6), on the ground that Wis. Stat. § 128.07 is preempted by the federal bankruptcy code. Because the purposes behind the bankruptcy code do not conflict with the provisions of the Wisconsin statute, I find no preemption.

Therefore, the motion to dismiss will be denied.

From the allegations of plaintiff's amended complaint, I draw the following facts.

## FACTUAL ALLEGATIONS

Plaintiff Michael Polsky is a Wisconsin citizen and the state court-appointed receiver for the assets of Ready Fixtures Company. Defendant Stevens Cabinets, Inc. is a Delaware corporation with its principal place of business in Teutopolis, Illinois.

At some point before January 13, 2005, Ready Fixtures became insolvent. Between January 13, 2005 and March 9, 2005, Ready Fixtures made payments to defendant totaling $79,874.85, on invoices that were due between December 13, 2004 and January 30, 2005.

On May 13, 2005, Ready Fixtures filed an Assignment for the Benefit of Creditors in the Circuit Court for Washburn County, Wisconsin. (An assignment for the benefit of creditors is a voluntary transfer of property, usually to a trustee or general assignee, who administers the property, liquidates it and distributes the proceeds equitably to all creditors. Alan Feld, *The Limits of Bankruptcy Code Preemption: Debt Discharge and Voidable Preference Reconsidered in Light of Sherwood Partners*, 28 Cardozo L.Rev. 1447, 1448 (2006).) On the same day, plaintiff was appointed receiver of Ready Fixture's assets.

On September 21, 2006, plaintiff brought suit against defendant in state court, alleging that the payments Ready Fixtures made to defendant allowed defendant to obtain more than its fair share of Ready Fixtures' assets under Wisconsin's insolvency preference statute, Wis. Stat. § 128.07. Plaintiff demanded that defendant refund the payments for *pro rata*

distribution to all Ready Fixtures' creditors. On November 13, 2006, defendant removed that action to this court.

## DISCUSSION

### A. *Overview*

■ The question presented by defendant's pending motion is whether Wisconsin's insolvency preference statute, Wis. Stat. § 128.07, is preempted by 11 U.S.C. § 547, the federal bankruptcy preference statute. Article I, Section 8 of the United States Constitution provides that "Congress shall have the Power.... To establish ... uniform Laws on the subject of Bankruptcies throughout the United States...." The Bankruptcy Code of 1978, as amended, was created under this express Constitutional grant of power to Congress. As a congressional enactment, the bankruptcy code is "the supreme Law of the Land, ... any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. Therefore, when a state enacts a statute that affects a party's rights or duties in a bankruptcy proceeding, the question becomes whether the state law is expressly preempted by Congress's power under the bankruptcy clause or has an impermissible application insofar as it relates to federal bankruptcy law.

It is undisputed that when a bankruptcy petition is filed, federal law trumps state law with respect to the action. *E.g.* 11 U.S.C. § 543(a)-(b). That is to say, the parties agree that if Ready Fixtures had filed for bankruptcy, or if its creditors had filed an involuntary bankruptcy on its behalf, the Wisconsin preference statute could not be used to recover any allegedly preferential transfers made to defendant. However, the parties disagree whether federal bankruptcy preference law preempts Wisconsin preference law in this case, where *no* bankruptcy petition has been filed.

■ To show that the Wisconsin law is preempted because it conflicts with federal law, defendant must prove either that (1) it is impossible to comply with both the challenged state law (in this case, the insolvency preference statute) and federal law; or (2) the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. *See, e.g., Crosby v. National Foreign Trade Council,* 530 U.S. 363, 372–73, 120 S.Ct. 2288, 147 L.Ed.2d 352 (2000); *Hillsborough County,* 471 U.S. at 712, 105 S.Ct. 2371. Defendant concedes that nothing in the bankruptcy code preempts state preference laws explicitly; however, it argues that Wisconsin's law differs from the federal statute in ways that undermine the main purposes of the bankruptcy code and therefore conflict with it. As the party contending that the state statute is preempted, defendant bears the burden of establishing that a conflict exists.

Although defendant concedes that it is possible to comply with Wis. Stat. § 128.07 without violating the bankruptcy code directly, it continues to emphasize differences between the state and federal laws. For example, defendant notes that Wis. Stat. § 128.07, unlike its bankruptcy counterpart, 11 U.S.C. § 547, permits a receiver to recover allegedly preferential transfers that took place up to four months before the filing of a petition for appointment of a receiver or an assignment for the benefit of creditors. By contrast, the federal bankruptcy statute allows for recovery of only those preferential transfers made in the three months preceding the filing of a bankruptcy petition. (This apparently minor difference is of some importance to defendant because many of the allegedly preferential transfers it received

were made between three and four months before Ready Fixtures filed its assignment.)

Second, defendant complains that Wis. Stat. § 128.07 fails to provide creditors like itself with defenses to receivers' demands for the return of allegedly preferential payments. Wisconsin law provides that

> [i]f [a] debtor has given a preference within 4 months before the filing of a petition, or an assignment, after the filing of the petition and before the appointment of a receiver, ... and the recipient has reasonable cause to believe that the enforcement of the judgment or transfer would effect a preference, the judgment shall be voidable by the receiver or assignee, and the receiver or assignee may recover the property or its value from the recipient.

Wis. Stat. § 128.07(2). There are no exemptions or defenses available for a creditor who has received a preferential transfer.

Under federal law, however, a bankruptcy trustee cannot recover an otherwise preferential payment to the extent that the transfer was "intended by the debtor and the creditor ... to be [and in fact was] a contemporaneous exchange for new value given to the debtor." 11 U.S.C. § 547(c)(1). Nor can the trustee recover a transfer

> to the extent that [it] was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was made in the ordinary course of business or financial affairs of the debtor and the transferee; or made according to ordinary business terms.

11 U.S.C. § 547(c)(2).

Although these differences are of obvious importance to defendant, they are legally relevant only insofar as they reveal a fundamental conflict between state and federal law. Defendant contends that the differences reveal that the Wisconsin state preference statute conflicts with the goals of the bankruptcy code. In support of that argument, defendant relies on a single case: the decision by the Court of Appeals for the Ninth Circuit in *Sherwood Partners, Inc. v. Lycos, Inc.*, 394 F.3d 1198 (9th Cir.2005).

In *Sherwood Partners*, the court of appeals examined a California preference statute similar to Wis. Stat. § 128.07, and found that it was preempted by the bankruptcy code. The court's opinion rested on several grounds, but prime among them was a concern that differences between the state preference statute and bankruptcy preference law might affect the incentives of various parties to avail themselves of the bankruptcy laws. The court emphasized that the bankruptcy code "embodies two ideals: (1) giving the individual debtor a fresh start, by giving him a discharge of most of his debts; and (2) equitably distributing a debtor's assets among competing creditors." *Id.* at 1203. Noting that all state discharge statutes are preempted because they conflict with the first goal of the bankruptcy code, the court reasoned that the California preference statutes was preempted because it implicated the second goal by altering the "equitable distribution" of a debtor's remaining assets.

The problems with the *Sherwood* decision are manifold, and have been addressed at length elsewhere. *See, e.g.,* Susan Power Johnson, *Federal Preemption of State Preference Statute in Sherwood Partners v. Lycos—An Unduly Restrictive Standard?*, Norton Ann. Surv. Bankr.Law, Part 1 § 6 (2007) (contending that *Sherwood Partners* rests on multiple misunderstandings of relevant precedents); Alan Feld, *The Limits of Bankruptcy Code Preemption: Debt Discharge and Voidable Preference Reconsidered in Light of Sher-*

*wood Partners,* 28 Cardozo L.Rev. 1447, 1448 (2006) (same). For the purpose of this case, two examples will suffice. First, the Ninth Circuit erred by placing the importance of discharge on a par with the goal of equitable distribution. Although Congress surely intended that bankruptcy provide a fair means of distributing assets, the focus of the code is on debtors, not creditors. "The *principal purpose of the Bankruptcy Code is to grant a 'fresh start' to the 'honest but unfortunate debtor.'"* *Marrama v. Citizens Bank of Massachusetts,* 503 U.S. 181, 127 S.Ct. 1105, 1107, 166 L.Ed.2d 956 (2007) (quoting *Grogan v. Garner,* 498 U.S. 279, 286, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)) (emphasis added). It is not to guarantee that creditors receive particular distributions of assets.

Long before and long after the bankruptcy code was enacted, states have made use of insolvency proceedings that mimic, but do not replace bankruptcy. Many of these state procedures are adopted by portions of the bankruptcy code. Take, for example, the duplicate state and federal law remedies that exist for fraudulent transfers. Like a preference, a fraudulent transfer involves a pre-bankruptcy (or pre-insolvency) conveyance by a debtor to a third party. Although the bankruptcy code provides a remedy of its own for the recovery of fraudulent transfers, 11 U.S.C. § 548, the code recognizes the existence of parallel state remedies under the Uniform Fraudulent Transfer Act, going so far as to permit a trustee in bankruptcy to operate under state remedies if she so chooses. 11 U.S.C. § 544(b) (incorporating the Uniform Fraudulent Transfer Act).

There is no principled way to distinguish the parallel state-federal tracks for recovery of fraudulent transfers from the parallel tracks for recovery of preferences. That the bankruptcy law does not incorporate preference provisions explicitly is of

no consequence: what matters is that bankruptcy law acknowledges the existence of avoidance powers available to creditors under state law. The preference powers given to receivers under Wis. Stat. § 128.07 are a perfect example.

The Wisconsin statute does not interfere in any way with the goals or operation of the bankruptcy code. Wisconsin insolvency proceedings provide debtors with an efficient, inexpensive way to liquidate their remaining assets equitably among their creditors. Within that system, Wis. Stat. § 128.07 provides receivers with a means of insuring that no one creditor gets more than his fair share of a debtor's estate. Although Wisconsin law gives receivers slightly more power to recover preferential transfers than the bankruptcy code gives trustees, those differences do not prevent the "equitable distribution" of the debtor's assets in a manner that would justify rendering the state procedure inoperable. To find that the state statute is preempted would force insolvent debtors always to file for bankruptcy, even when simpler, less expensive state proceedings are available to them. That result is a historical and, if anything, *undermines* the bankruptcy code's focus on protecting (rather than exploiting) the debtor.

Second point. As plaintiff is quick to point out, the Supreme Court has had occasion to consider a preemption challenge to Wisconsin Statutes Chapter 128 and upheld it, finding no preemptive conflict between it and the bankruptcy code. In *Pobreslo v. Joseph M. Boyd Co.,* 287 U.S. 518, 521, 53 S.Ct. 262, 77 L.Ed. 469 (1933), the court considered "whether ... the provisions of ... chapter [128] which relate to voluntary assignments for the benefit of creditors, and especially a clause contained in section 128.06, conflict with the National Bankruptcy Act." In finding that the state insolvency proceedings were not preempted, the Court emphasized that

the Wisconsin procedures (which have changed little in the 80 years since the decision issued) did not attempt to discharge debt, an act that would be preempted. The Court noted that

> [t]he provisions regulating the administration of trusts created by voluntary assignments for the benefit of creditors .... do not prevent creditors from bringing action against the debtor or require those seeking to participate in the distribution of the estate to stipulate for his discharge. And, *quite in harmony with the purposes of the federal act,* the provisions of chapter 128 that are regulatory of such voluntary assignments serve to protect creditors against each other, and go to assure equality of distribution unaffected by any requirement or condition in respect of discharge.

*Id.* at 525–26, 53 S.Ct. 262 (emphasis added). Although the Court's analysis focused on the voluntary assignment provisions of Wis. Stat. § 128.06, rather than § 128.07, it is clear that the Court examined Chapter 128 as a whole and found its provisions wholly consistent with the goals of the bankruptcy code.

In short, defendant's preemption argument rests on non-binding and unpersuasive circuit court precedent that contradicts established Supreme Court law. Because the preference provisions of Wis. Stat. § 128.07 do not conflict with the bankruptcy code, they are not preempted by it. Defendant's motion to dismiss will be denied.

## ORDER

IT IS ORDERED that defendant Stevens Cabinets, Inc.'s motion to dismiss is DENIED.